JANVIER, Judge.
The plaintiffs, Mr. and Mrs. Eli Syse, on August 14, 1952, purchased from Lee Bass a piece of real estate in New Orleans, which Bass had purchased on June 22, 1951, from the State of Louisiana. The purchase by Bass from the State was confirmed on July 11, 1951, by the issuance of a patent which was duly registered in the Conveyance Records of the Parish of Orleans.
The State had acquired the property on November 9, 1931, by adjudication for non *214 payment of state taxes for the year 1930. The adjudication to the State was confirmed by notarial act dated April 26, 1932, which act was duly registered in the Conveyance Records of the Parish of Orleans on April 27, 1932.
Prior to and at the time of the adjudication to the State of Louisiana and at the time of the accrual of the taxes for 1930, the property was owned by Joseph A.. Fav-ret, William S. Bender and Dr. A. G. Bravo.
In August, 1953, in an expropriation proceeding brought in the Civil District Court for the Parish of Orleans by the Orleans Parish School Board against Mr. and Mrs. Eli Syse, Joseph A. Favret, William S. Bender and Dr. A. G. Bravo, the property was adjudicated to the said School Board and the proceeds, $2,000, in accordance with the judgment which was rendered, were deposited in the registry of the Civil 'District Court and all claimants, including Mr. and Mrs. Eli Syse and the three original owners of the property, Joseph A. Favret, William S. Bender and Dr. A. G. Bravo, were referred to the said proceeds.
Mr. and Mrs. Syse on November 13, 1953, brought this suit against the three said original owners and prayed for judgment recognizing that they were the owners of the property at the time of its expropriation and ordering that the said fund on deposit be turned over to them.
Favret and Bender were present within the jurisdiction of the Court, but Bravo was absent and a curator ad hoc was appointed to represent him. Favret and Bender, through counsel of their own selection, filed answer as did the curator for the absent defendant.
The defense presented on behalf of Favret and Bender and that presented on behalf of the absent Bravo are so similar that we shall not distinguish between them but throughout shall refer to all as defendants and treat them as though they had all made the same defense and had all, for the same reasons, claimed that the fund should be turned over to them, each to receive an undivided one-third
There is no dispute over the facts. The property which was involved is described as follows:
“A certain lot of ground, together with all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the third district of New Orleans, in Square 1251, bounded by Egania, Andry, North Ton-ti and North Rocheblave (formerly Virtue) Streets, said lot being designated by the No. 26 and measuring 32 feet front on North Tonti Street, the same width in the rear, by a depth between equal and parallel lines of 170 feet 6 inches”.
The defendants maintain that they and not the plaintiffs are entitled to the fund, and they aver that the adjudication to the State in 1931 was null and void for the reason that the notice of the proposed tax sale, from which for want of a purchaser the property was adjudicated to the State, was directed to Ceasar Reno, whereas they were in fact the record owners. They aver that Ceasar Reno was at no time the record owner of the property but that at one time it was owned by Ceasar Heno, Jr., who on January 3, 1928, sold it to Firmin Chaussier, who in turn .sold it to defendants on January 17, 1930, by deed and counter-letter which were duly registered in the Conveyance Records of the Parish of Orleans on February 24, 1930.
There was judgment in the Civil District Court in favor of plaintiffs and against the three defendants “quieting and confirming the title of plaintiffs * * * in and to the * * * real estate,” and “in and to the proceeds of $2,000.00 on deposit in the Registry of this Court * * *.”
Favret and Bender appealed suspensively and the curator ad hoc, when the matter was argued before us, stated that he did not know whether it was his duty to appeal for the absent defendant, Dr. A. G. Bravo, but later the curator ad hoc appealed devolutively and, on motion, that appeal was consolidated with the earlier appeals of Favret and Bender
*215 It is conceded that, when the property was adjudicated to the State, Favret, Bender and Bravo were the record owners of it, and it is not denied that the notice of the proposed sale from which the adjudication to the State resulted was issued in the name of “Reno Ceasar or Ceasar Reno,” and not in the name of the record owners. However, plaintiffs contend that, since more than five years elapsed after the adjudication to the State, the defect in the notice has lost its importance’ because of the effect of section 11 of Article 10 of the LSA-Constitution of 1921. And though, in their petition, they made no reference to Act 476 of 1950, as amended by Act 277 of 1952, LSA-R.S. 47 ¡2228.1 and note, their counsel in this Court, in oral argument and in brief, contended that, in addition to the constitutional preemption referred to, any rights which Bender, Favret and Bravo may have had were lost as a result of the statutory peremption which appears in those two statutes. And counsel contend that, as a result of the constitutional and the statutory peremptions, the adjudication to the State could only have been attacked on the ground that the taxes for which the property was adjudicated had in fact been paid, or on the ground that the three said original owners had remained in actual, physical possession of the property.
The said original owners did not remain in physical possession and the taxes from which the adjudication resulted were not paid, and from those facts it is argued that, as a result of the peremptions, all possible right of the three defendants to set aside the adjudication have vanished, and that the plaintiffs, as absolute and sole owners of the property at the time of the expropriation are entitled to the fund which is on deposit.
It is necessary that we carefully consider and analyze several opinions of our Supreme Court and that we again consider whether we were correct in the conclusion reached by us in Doll v. Mallard, La.App., 77 So.2d 39.
In Doll v. Meyer, 214 La. 444, 38 So.2d 69, there was presented a question which, unless carefully studied, would seem very close to that which confronts us. Meyer, the defendant, had agreed to purchase certain real estate from Doll, the plaintiff. Meyer refused to take title, contending that the title of Doll was defective in that there remained in esse a possible claim in the original owner, Philip Romano, who had had the record title before it was adjudicated to the State for nonpayment of taxes, the State having later sold it to Doll on September 7, 1946. Doll, believing that Act 106 of 1934, LSA-R.S. 47:2228, authorized the bringing of a suit to quiet his title, brought such a suit against the original owner, Romano, and his heirs and obtained a judgment purporting to quiet and confirm his title.
When, in the suit of Doll to compel Meyer to accept title, Meyer pointed to the possible claim of Romano or his heirs, Doll contended that the judgment purporting to quiet his title was res judicata as to all questions which could have been raised by Romano or his heirs. The Supreme Court held that, since the title which Doll had to the property had been derived through an adjudication to the State, the right of Doll to bring suit to quiet title was not authorized by the Act of 1934 and that, since there was no other statute which authorized such a suit, the judgment which Doll had obtained was in effect a nullity and did not quiet his title. The Court indicated that, although the right to quiet such a title existed in a purchaser from the State, Act 106 of 1934 did not provide a method or remedy by which such a purchaser might bring suit to quiet title and that the provisions of that act applied only where there had been an actual sale to a third person and not where the property had been adjudicated to the State.
Shortly after its decision in Doll v. Meyer, supra, the Supreme Court, on December 11, 1950, rendered its decision in Fried v. Edmiston, 218 La. 522, 50 So.2d 19, 21, and, referring to the Doll case, said that in that case it had decided
“that Act 106 of 1934 was not applicable to the purchaser of a tax title from the State, * *
*216 In Doll v. Mallard, supra, we referred to these decisions, saying that as a result of them, prior to the passage of Act 476 of 1950, which was reenacted and broadened by Act 277 of 1952, while there existed a right to quiet such a tax title which had derived through the State, there did not exist a method or remedy by which the right might be availed of, and we said that these statutes were enacted for the purpose of providing a method or remedy by which one, who derives his title through a tax adjudication to the State, may quiet his title.
A little later bur Supreme Court, on November 9, 1953, rendered its decision in Housing Authority of New Orleans v. Banks, 224 La. 172, 69 So.2d 5, and that decision, unless it be carefully analyzed, might seem to conflict with the result reached in Doll v. Meyer, supra. But it is evident that the two decisions are not inharmonious for, in the Housing Authority case, the Supreme Court referred to the case of Doll v. Meyer and said that the decision in that case “is correct.”
In the Housing Authority case the property which was involved had belonged to Julius P. Ceasar. In 1927, state taxes on the property were not paid, and on November 17, 1928, the property was adjudicated to the State for nonpayment of those taxes. In 1930, it was again adjudicated to the State for nonpayment of the taxes of 1929. The fact that there were two adjudications is of no importance here. In April, 1948, nearly twenty years after the first adjudication to the State, the property was sold by the State to A. A. Banks.
The Housing Authority required the property and, being vested with the right of eminent domain, it expropriated it. The price was fixed at $2,720, and it deposited this sum in the Registry of the Court “so that claims could be made against the proceeds by litigants with a real or actual interest to pursue.” Banks filed a rule in which he claimed the entire proceeds. Ceasar, the original owner and tax debtor having died, the administrator of his estate was a party defendant in the proceedings and claimed the fund, contending that Ceasar, the tax debtor, “did not receive nor tice of his tax delinquency in either adjudication.” The Supreme Court stated the question which was-involved as follows:
“ * * * the issue of substance in this case is: Did the State have a valid title, and, after waiting for nearly twenty years with no taxes being paid on the property and no redemption being sought by the succession administrator, did it have a legal right to issue its patent?”
The Court then held that Banks, who had acquired title by patent from the State which in turn had acquired by adjudication for unpaid taxes, was entitled to the fund and that Ceasar and his heirs had lost all -right to present any claim. The Court said:
“More than five years have expired since the deed of adjudication to the State for non-payment of taxes, and more than five years have elapsed since the heirs or assigns have had physical possession of the property. The only defense available to this defendant is the payment of the taxes for which the property was adjudicated to the State. This he has not urged, and he therefore has not an action or interest to pursue. Article X, § 11, La. Const, of 1921; Act 147 of 1932; Pittman v. Gulf Refining Co., D.C.La., 43 F.Supp. 187; [Id.] 5 Cir., 141 F.2d 478; Meshell v. Bauer, 215 La. 619, 41 So.2d 237; Kathman-Landry, Inc., v. Morrison, La.App., 64 So.2d 40; Code of Practice of Louisiana, Article 15.”
Counsel for the three original owners think that they have found the reason for the difference in the results which were reached by the Supreme Court in the two cases, Doll v. Meyer, on the one hand, and Housing Authority of New Orleans v. Banks, on the other.
What counsel say is simply this, — that in Doll v. Meyer, Doll, who was attempting to quiet his tax title which had come through *217 an adjudication to the State, was plaintiff and, as such, was attempting to use the constitutional peremption aggressively, as a sword, to cut off any right which the original owner, Romano, but for the per-emption, might have had. And counsel say that, in the Banks case the administrator of the succession of the original owner, Ceasar, was the claimant, and that Banks, whose title depended on a tax adjudication to the State, was in the position of defendant and was using the peremption not as a sword but as a shield, as a defense against the claim of Ceasar’s administrator.
To some extent counsel are correct. Prior to the enactments, Act 476 of 1950 and the later amending act, No. 277 of 1952, there was no enabling act under which such a suit as Doll v. Meyer could be brought, and therefore an owner who had acquired title which had derived through a tax adjudication could not attempt to quiet his title through reliance on the constitutional peremption. But there is no doubt in our mind that even without an enabling act, a former owner whose title had been lost through a tax adjudication was prevented from attempting to annul the adjudication. Thus in such a case as this, or as Housing Authority v. Banks, even before the enactment of those two statutes, any claim which the original owners might have had to annul an adjudication to the State was lost as a result of the constitutional per-emption. We so held in Doll v. Mallard, supra.
We think that the true distinction between the two cases, Doll v. Meyer, and Housing Authority of New Orleans v. Banks, lies in the fact that in the former case the question of peremption was not involved. What was involved was whether or not there was legal authority for the bringing of a suit to quiet title where the title had been derived through the State.
The Supreme Court held that there was no such authority; that Act 106 of 1934 on which Doll relied in bringing his suit to quiet title was applicable only where the title had come through an actual tax sale and not where it had come through an adjudication to the State. The Court so stated. And in Fried v. Edmiston, supra [218 La. 522, 50 So.2d 21], said that the Act of 1934 had no application “to the purchaser of a tax title from the State”.
It was clearly as a result of the decisions of the Supreme Court in Doll v. Meyer and in Fried v. Edmiston that the Legislature enacted what is now LSA-R.S. 47:2228.1, as a result of which an owner whose title derives through a tax adjudication to the State may now bring suit to quiet title.
It is not necessary that we consider the contention that the statutes of 1950 and 1952, if given retroactive effect, would be unconstitutional for the reason that, without the application of those statutes, it is our opinion that any rights, which the original owners may have had, were lost as a result of the constitutional peremption;
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.